**NAKAJIMA ALL CO., LTD., Plaintiff,**

and

**Sears, Roebuck and Co., Intervenor–Plaintiff,**

v.

**UNITED STATES, Defendant,**

and

**Smith Corona Corporation, Intervenor–Defendant.**

**Court No. 87–01–00089.**

United States Court of International Trade.

April 1, 1991.

McDermott, Will & Emery (R. Sarah Compton and David J. Levine), Washington, D.C., for plaintiff.

Barnes, Richardson & Colburn (Robert E. Burke, Brian F. Walsh and James A. Karamanis), Chicago, Ill., for intervenor-plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (Velta A. Melnbrencis); Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce (Pamela A. Green), of counsel, Washington, D.C., for defendant.

Stewart and Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr.

and John M. Breen), Washington, D.C., for intervenor-defendant.

## MEMORANDUM & ORDER

AQUILINO, Judge:

The plaintiff has requested that the court affirm the final results of remand proceedings filed by the International Trade Administration, U.S. Department of Commerce ("ITA") in conjunction with slip op. 90–67, 14 CIT ——, 744 F.Supp. 1168 (1990), and that final judgment be entered in its favor. However, since those results are stated to be based on a clearly erroneous premise, the relief requested cannot be granted at this time.

### I

Familiarity with slip op. 90–67 is presumed. In that opinion, the court concluded that, while the ITA has broad discretion in the enforcement of the trade law and its expertise is entitled to deference, its

> decision to investigate Nakajima's costs of production all over again in 1985 was not supported by substantial evidence on the record or otherwise in accordance with law within the meaning of 19 U.S.C. § 1516a(b)(1)(B) ... and this matter [had to] be remanded to the agency for further proceedings ... regarding the margin of dumping, if any, of plaintiff's merchandise for the period May 1, 1981 to April 30, 1982.

14 CIT at ——, 744 F.Supp. at 1177.

The intervenor-defendant interposed a motion for rehearing, arguing, among other things, that the court's decision "amount[ed] to an 'exclusionary rule' unprecedented in the administrative context of the antidumping law." The defendant, as well as the plaintiff and intervenor-plaintiff, opposed the motion, with the government summarizing its viewpoint as follows:

> In its motion for rehearing, Smith–Corona essentially argues that (1) even if [it] had not alleged sales below cost, Commerce would have still been com-

pelled to verify Nakajima's cost of production data because of a need for verified cost data for adjustments for differences in physical characteristics of the models being compared; and (2) the Court's opinion created an unwarranted "exclusionary rule." Neither argument supports a motion for rehearing.

> Admittedly, Commerce required cost data for adjustment purposes. However, the cost of production investigation in issue was not conducted for the purpose of obtaining cost data for adjustment purposes. It was conducted in order to determine whether Nakajima's sales of PETs in the home market during the review period were made at prices which were below the cost of producing the PETs. Consequently, Smith–Corona's argument does not point to any legal or factual error which is crucial to the Court's opinion.

> We do not consider the Court's opinion as creating any "exclusionary rule." We read the opinion as merely holding ... that, if [Smith Corona] were now permitted to submit additional data, the credibility of its market research report could be restored.[1]

After careful consideration of this and the other arguments presented, the court concluded that no grounds existed for the grant of rehearing, and an order was therefore entered, denying intervenor-defendant's motion.

### II

The ITA's subsequent Final Results of Redetermination Pursuant to Court Remand conclude, based on the parties' comments "and the existing administrative record ... that the revised weighted-average margin for Nakajima for the period May 1, 1981 through April 30, 1982 is 0.0024 percent." In reaching this result, the agency states that in

> accordance with the [court's remand] order we have completed the analysis of Nakajima All Co., Ltd. ("Nakajima") us-

---

**1.** Defendant's Opposition to the Motion Filed by Smith–Corona Corporation for Rehearing, pp. 4–5 (footnotes omitted).

ing the home market sales data submitted ... in its amended questionnaire response of March 11, 1983, rather than using the best information otherwise available.

\* \* \* \* \* \*

The CIT directed the Department to rely on the data submitted by Nakajima rather than use BIA.

In our revised analysis we have removed all of the BIA data originally used for the home market analysis and inserted sales data from Nakajima's amended questionnaire response of March 11, 1983. Sales data were entered on the computer program for models 7500, 8500, 8600, and M100, and margins were calculated based on Nakajima's sales data. We made no change to the foreign market value calculated in the January 14, 1987 final results for model 8800C. The calculation of U.S. price for all five models is the same as that employed in the original analysis.

We made adjustments to the foreign market value for Japanese inland freight, the difference between packing for sale in Japan and packing for sale in the United States, differences in merchandise, and differences in credit.

Clearly, the statement that this court directed the Department to rely on data submitted by Nakajima rather than use the best information otherwise available is erroneous, and this misapprehension appears to be the linchpin of the outcome on remand. For example, in its instant request for affirmance, the plaintiff argues that, "[a]s correctly stated in ITA's remand determination, the Court directed ITA to rely on the sales data submitted by Nakajima rather than use BIA."

If, as alleged by the intervenor-defendant in its motion for rehearing, slip op. 90–67 is not perfectly clear, nonetheless that decision nowhere contains the direction claimed. Indeed, the opinion makes specific mention of the ITA's "broad discretion in the enforcement of the trade law" and also that its expertise, including how best to proceed on remand, is entitled to

deference. This being the legal standard, it was the premise of the court's order.

In its opposition to rehearing, the defendant had little difficulty dispelling the purported creation of an exclusionary rule. Of course, there could be, and therefore was, no such ruling. But then, the ITA apparently proceeded with the remand as if there had been. In its opposition to rehearing, by way of example, the defendant had argued that,

> given the fact that this Court has determined that Commerce should not have initiated a cost of production investigation in this case, new evidence should not now be submitted to Commerce in order for it to reconsider this issue.[2]

Suffice it to state now that slip op. 90–67 held only that the ITA could not have initiated a cost-of-production investigation based on the record then in existence. As for what the agency should have done after remand, if any party was effectively precluded from providing information which might shed light on the margin of dumping of plaintiff's merchandise for the period under review, those proceedings were not carried out in accordance with the law of this case. That is, on the record at hand, the court cannot conclude otherwise, nor is it able to conclude that, if the ITA excluded information, such exclusion constituted harmless error. Hence, a second remand is necessary—to afford the agency an opportunity to receive and consider whatever data the parties may possess and which bear on the ultimate question presented for redetermination.

The ITA may have 45 days from the date hereof to reconsider the question and to report the results thereof to the court, whereupon the plaintiff and intervenor-plaintiff may have 20 days in which to respond, and the defendant and the intervenor-defendant may have ten days to reply thereto.

So ordered.

2. *Id.* at 6.